IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHARICE Y. HAMMONDS, | ) | CASE NO. 5:12-CV-2064 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | REPORT & RECOMMENDATION |
| | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to local rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Sharice Hammonds' application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

I. PROCEDURAL HISTORY

Plaintiff Sharice Hammonds ("Plaintiff" or "Hammonds") has unsuccessfully applied for Disability Insurance benefits a total of four times. (*See* Tr. 14). This current appeal is based upon Plaintiff's most recent application which was filed on March 3, 2009. (Tr. 89, 119-25). The application was denied initially and upon reconsideration. (Tr. 95-98, 103-09). On May 25, 2010, Plaintiff filed a written request for a hearing before an administrative law judge ("ALJ"). (Tr. 110-11). The Commissioner granted Plaintiff's request and scheduled a hearing. (Tr. 112).

Administrative Law Judge Robert King convened a hearing on March 24, 2011, to hear Hammonds' case. (Tr. 34-88). Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id.*). Lynn Smith, a vocational expert, also appeared and testified. On April 11, 2011, the ALJ issued his decision applying the five-step sequential analysis[1] concluding Hammonds was not disabled. (Tr. 14-29).

Following the issuance of this ruling, Plaintiff sought review of the ALJ's decision from the Appeals Council. (Tr. 8-10). However, the council denied Plaintiff's request, thus rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-7). Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## II. PERSONAL BACKGROUND INFORMATION

Hammonds was born on July 11, 1961 and attended school through the ninth grade. (Tr. 40). In the past, she has worked as printing machine operator and machine operator. (Tr. 61). During the hearing, Hammonds testified that her diabetes and its associated symptoms render her unfit to work. (Tr. 50). However, Plaintiff conceded that she was currently receiving unemployment compensation – aid which is only provided to individuals who are fit to work. (Tr. 39-40).

## III. MEDICAL EVIDENCE[2]

On August 19, 2009, Hammonds presented to Dr. E. M. Bard for a psychological evaluation. (Tr. 387-92). Dr. Bard noted Plaintiff complained of vision problems, high cholesterol and problems associated with diabetes. (Tr. 388). Hammonds indicated that she was released from her previous position after ten years because she was constantly "in and out" of the hospital. (*Id*.). Dr. Bard administered Plaintiff two psychometric tests. (Tr. 390-91). First, Dr. Bard administered Plaintiff the Wechsler Adult Intelligence Scale –IV ("WAIS-IV") test. (Tr. 390). Hammonds scored 54 in verbal comprehension, 69 in perceptual reasoning, 63 in working memory, 65 in processing speed, and achieved a full scale IQ score of 57. (*Id*.). After reviewing these scores, Dr. Bard stressed that they "must be viewed with caution." (*Id*.). The doctor believed the scores under-estimated Hammonds' actually abilities as she tended to give up during the exam, particularly during the more challenging tasks. (*Id*.).

---

[2] The following is a summary of the medical evidence relating to Plaintiff's mental impairments. It is not intended to fully reflect all of the evidence the undersigned took into consideration in reaching its decision. Nor does it reference the medical evidence reflecting Plaintiff's physical impairments, such as her diabetes and its accompanying symptoms, as Plaintiff's appeal was not based upon these impairments.

Dr. Bard also administered Hammonds the Wide Range Achievement Test – 4 ("WRAT-4").  (Tr. 391).  Plaintiff scored 35 in word reading, 10 in sentence comprehension, 18 in spelling, 27 in math computation, and 119 in reading composite.  (*Id*.).  However, again, Dr. Bard warned that these scores should be viewed with caution as Plaintiff's social functioning demonstrated she was not as limited as the test results suggested.  (*Id*.).  For example, Dr. Bard noted that Hammonds was able to handle her own finances, obtain her driver's license through passing a written exam and independently manage household chores and responsibilities.  (*Id*.).  Dr. Bard concluded that these abilities did not correspond with Plaintiff's WRAT-4 profile.  (*Id*.).

Finally, Dr. Bard opined on the degree of Plaintiff's limitation in four work-related areas of mental functioning.  (Tr. 392).  The doctor held Hammonds had mild limitations in her ability to relate to fellow coworkers and supervisors and to understand, remember and follow instructions.  (*Id*.).  Furthermore, Dr. Bard found Plaintiff was moderately limited in her ability to withstand the stresses and pressures of day-to-day work.  (*Id*.).  Yet, Dr. Bard opined Plaintiff was not restricted at all from performing simple, repetitive tasks.  (*Id*.).

On September 20, 2009, Dr. Mel Zwissler, a state agency psychologist, reviewed Plaintiff's medical records and assessed Plaintiff's residual mental functional capacity.  (Tr. 407-10).  At the onset of his report, Dr. Zwissler credited Dr. Bard's findings. (Tr. 409).  Dr. Zwissler evaluated Hammonds' ability to perform 20 different mental tasks related to working. (Tr. 407-10).  He concluded Plaintiff was markedly limited in her ability to understand, remember and carry out detailed instructions, moderately limited in her ability to maintain attention and concentration for extended periods, to complete a normal workday and workweek without

psychologically based symptoms and to respond appropriately to changes in the work settings, but not significantly limited in the remaining areas evaluated. (Tr. 407-08).

Dr. Zwissler also assessed Plaintiff's abilities in other areas. With regard to relating to others, including co-workers and supervisors, Dr. Zwissler opined Plaintiff had mild limitations. (Tr. 409). Likewise, the doctor concluded Plaintiff had mild limitations in her capacity to understand, remember and follow instructions and to withstand the stress and pressure associated with daily work activity. (Tr. 409-10). However, Dr. Zwissler found Hammonds had no limitations in her ability to perform simple repetitive tasks. (Tr. 410). Dr. Zwissler held that Hammonds' statements were only partially credible because her functional abilities were not as restricted as her IQ scores may have suggested. (Tr. 409). In fact, Dr. Zwissler cautioned that Plaintiff's IQ scores should "be viewed with caution", just as Dr. Bard admonished. (*Id.*). Ultimately, he ruled that Plaintiff was capable of performing "1-2 step tasks in a routine environment." (Tr. 410). But, he noted that she was "[u]nable to perform work requiring goals and standards or where changes [could not] be readily explained." (*Id.*).

On April 26, 2010, state agency reviewer, Dr. David Demuth, analyzed Hammonds' medical record and affirmed Dr. Zwissler's findings as written. (Tr. 565).

## IV. ALJ's DECISION

The ALJ made the following relevant findings of fact and conclusions of law:

1. The claimant's insured status for purposes of entitlement to a period of disability and disability insurance benefits under title II of the Social Security Act expired on March 31, 2011.

2. The claimant has not engaged in substantial gainful activity since January 4, 2008, the alleged onset date.

3. The claimant has the following severe impairments: (1) diabetes mellitus, (2) obesity, (3) osteoarthritis of the thoracic spine, (4) hypertension, (5) adjustment disorder with depressed mood, secondary to medical concerns, (6) borderline intellectual functioning, and (7) history of alcohol abuse.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the following residual functional capacity, which has existed at all times since the alleged onset date of January 4, 2008. She can perform the exertional demands of "light work," as defined in 20 CFR 404.1567(b). She can lift and/or carry 20# occasionally and 10# frequently. She can stand and/or walk (with normal breaks) for about 6 hours in an 8 hour workday. She can sit (with normal breaks) for about 6 hours in an 8 hour workday. She has an unlimited ability to push and/or pull, other than as restricted by her limitations on lifting and/or carrying. She can occasionally climb ramps and stairs. She can never climb ladders, ropes or scaffolds. She cannot work in temperatures over 80 degrees Fahrenheit. She cannot have any exposure to hazards such as dangerous moving machinery or unprotected heights. She cannot drive a motor vehicle as part of her job. She is limited to simple, routine, repetitive tasks, involving only simple, work-related decisions at Dictionary of Occupational Titles (DOT) reasoning levels 1 through 3, and in general, relatively few workplace changes. She can interact superficially with others, but is not able to answer in depth questions. She cannot work in an environment with extremely high quotas, very strict time limits or deadlines, or extremely fast-paced production demands (such as those encountered on a fast moving assembly line.)

6. The claimant is unable to perform any past relevant work.

…

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 4, 2008, through the date of this decision.

(Tr. 16-29) (internal citations omitted).

## V. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001)*; Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence

in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VII. ANALYSIS

Plaintiff's appeal centers upon the ALJ's treatment of the opinions offered by the state agency psychologists who reviewed her medical records. Hammonds contends the ALJ improperly rejected these opinions and should have recontacted the doctors to resolve the ambiguity the ALJ noted in their opinions. This argument is not well-taken.

When evaluating a claimant's application for benefits, the ALJ retains the ultimate responsibility of weighing the evidence before the Commissioner to determine whether the claimant is entitled to benefits. 20 C.F.R. § 416.927(e)(2). In doing so, part of the ALJ's duty is to consider opinions offered from state agency medical or psychological consultants. *Id*. These state agency consultants are considered to be "highly qualified" and "experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i). Yet, despite these qualifications, the regulations specifically note that ALJs are not bound by any findings reached by these consultants. *Id*. Instead, the ALJ must determine how much weight to assign to the opinion by considering factors such as "the consultant's medical specialty and expertise in [the Administration's] rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions." 20 C.F.R. § 416.927(e)(2)(ii).

In the instant case, Plaintiff objects to the ALJ's decision to assign "little weight" to the opinions of Dr. Mel Zwissler and Dr. David Demuth, the two state agency psychologists who opined on Plaintiff's mental residual functioning capacity. Amongst other things, Dr. Zwissler

8

concluded that Hammonds only retained the ability to perform "1-2 step tasks in a routine environment" and was "[u]nable to perform work requiring goals and standards". (Tr. 410). Dr. Demuth later affirmed these findings as written. (Tr. 565). Hammonds contends that had the ALJ fully credited these opinions, she would have been deemed disabled.

As an initial matter, the undersigned notes that Plaintiff's brief did not provide much argumentation, case law or proof demonstrating that the ALJ's evaluation of this evidence was erroneous. Nevertheless, the undersigned will address those arguments which are readily perceivable from reading the brief.

Despite Plaintiff's objection, the undersigned finds the ALJ provided several credible reasons for discrediting the doctors' findings. First, the ALJ explained that he did not credit the doctors' conclusion that Plaintiff was limited to 1-2 step tasks. The ALJ found that the doctors incorrectly reached this conclusion based upon their consideration of Hammonds' intellectual deficits. However, the ALJ noted that Plaintiff had worked as a printing machine operator in the past, a job which the Dictionary of Occupational Titles ("DOT") lists as having a level 3 specific vocational preparation ("SVP") rating.[3] The ALJ noted that jobs at this level—semi-skilled positions—require between 30 days and three months to learn. As a result, the ALJ doubted that Plaintiff would have been capable of performing such work if she were truly limited to unskilled work as found by the state agency doctors. Given Plaintiff's 10 years experience working in a job with a SVP 3 classification, it was reasonable for the ALJ challenge the state agency reviewers' opinions indicating Plaintiff was limited to jobs with an SVP level of 1 or 2.

---

[3] The DOT assigns a SVP time for every job described therein. SSR 00-4p, 2000 WL 1898704, at *3 (2000). "Using the skill definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." Id.

Nevertheless, Hammonds suggests she did not possess the mental ability to perform work with an SVP level of 3 at the time of her hearing because her recent diagnosis of depression and anxiety eroded her mental functional capacity to complete such work.  However, the ALJ's ruling was not solely based on his assessment of Hammonds' prior mental functioning level.  Rather, the ALJ provided additional reasons for discounting this portion of the state agency psychologists' opinions.  The ALJ highlighted that despite her mental impairments, Plaintiff still retained the ability to live independently, raise a family, drive and function in the community.  Plaintiff did not dispute her ability to perform these activities.  The ALJ further noted that Plaintiff was not illiterate, nor had she been diagnosed with mental retardation.  In fact, to the contrary, both state agency reviewers and Dr. Bard warned that Plaintiff's test scores were not accurate reflections of her abilities.  Consequently, the undersigned finds the record supports the ALJ's decision to discount this portion of the reviewers' opinions.

The ALJ also supplied sufficient reasons for disregarding the doctors' opinions that Plaintiff was "unable to perform work requiring goals or standards."  The ALJ began by recognizing the inherent ambiguity in this statement.  The ALJ noted that to a degree, all jobs require the achievement of *some* goal or standard.  Therefore, the ALJ ruled that to the extent the doctors intended to convey that Plaintiff was unable to meet *any* goal or standard, he completely discredited their opinions.

However, the ALJ did not believe the reviewers intended to attach this meaning to their finding.  The undersigned concurs. Notably, Dr. Zwissler's report indicates that Plaintiff had no limitation in her ability to perform simple, repetitive tasks.  Dr. Bard reached the same conclusion, and was credited by Dr. Zwissler.  It was reasonable for the ALJ to conclude that the reviewers would not have found Hammonds capable of performing simple, repetitive work if she

were not able to meet *any* goal or standard.  Furthermore, the ALJ highlighted that Plaintiff was able to accomplish goals and achievements in her personal life.  For example, Hammonds attended regular classes in school, successfully worked at a job (with goals and standards) for several years, raised a family and maintained current relations with them, and lived independently.  Finally, the ALJ added that he was not persuaded that Plaintiff's remaining ailments rendered her disabled as she provided inaccurate testimony regarding her alcohol use, visual acuity and compliance with checking her glucose levels.

Although Hammonds disagrees with the ALJ's interpretation of the doctors' statement, she has not shown that the ALJ's interpretation was so faulty as to require remand.  It is the ALJ's responsibility to analyze the record evidence and resolve conflicts therein.  *Richardson, supra*, 402 U.S. at 399.  The ALJ's discussion of these physicians' opinions provides a detailed account of how the ALJ assessed and resolved the ambiguity and inconsistency in their opinions.

While it is true that the ALJ *could* have recontacted the doctors to positively determine the exact meaning of their conclusion regarding Plaintiff's ability to accomplish goals or standards, Plaintiff has not successfully shown that the ALJ erred by failing to recontact either of these two doctors.  Because Plaintiff failed to cite any case law or regulation supporting her contention, the Court presumes Plaintiff's argument is based upon 20 C.F.R. 416.912(e).  Prior to March 25, 2012, this regulation directed ALJs to recontact a claimant's medical source whenever the source provided evidence which was inadequate for the ALJ to determine whether the claimant was disabled, such as when the source's medical report contained a "conflict or ambiguity that must be resolved".  *See* 20 C.F.R. § 416.912(e)(1) (effective June 13, 2011 to

11

March 25, 2012); 77 FR 10651-01.[4]  The duty has been described as arising only when "the existing medical evidence is inadequate to make a disability determination."  *Phelps v. Astrue, No. 08-123-GFVT, 2009 WL 2778212, at \*2 (E.D.Ky. Sept. 1, 2009)*.  However, the duty did not arise in this case because the overall record before the ALJ was sufficient to permit him to render a determination.  Rather than discrediting the opinions based upon the ambiguity present, the ALJ considered the evidence as a whole and supplied adequate reasons for rejecting the said restrictions announced by the state reviewers.  *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 n.3 (6th Cir. 2009) ("[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician.").  As outlined above, the reasons provided by the ALJ for discrediting the state agency reviewers are supported by the substantial evidence in the record.  Accordingly, the ALJ did not need to recontact the doctors to seek clarification of their opinions.

    Lastly, the undersigned notes that even if the ALJ had accepted both of the restrictions at issue, the ALJ's ultimate decision would not have changed because the vocational expert identified jobs meeting both limitations.  During the hearing, the expert testified that there were positions which did not require accomplishing goals or standards, such as that of an assembler, office cleaner and cafeteria attendant.  Although only the position of an office cleaner had the lowest SVP rating of 1, the vocational expert testified that even illiterate individuals were capable of performing the other jobs identified.  Therefore, because the ALJ reasonably

---

[4] In March 2012, the regulation was amended to delete this requirement.  *See* 77 FR 10651-01.  Neither Plaintiff nor the Commissioner addressed this amendment, but the undersigned is inclined to find that this prior version of the regulation applied to Hammonds as the ALJ's decision was rendered in April 2011, while the prior version was still effective.

concluded that Plaintiff was not precluded from performing work with an SVP rating greater than 1, Plaintiff would be able to perform the other jobs identified by the vocational expert. Thus, in light of the expert's testimony, the undersigned is further persuaded that the ALJ's final ruling is supported by the record.

## VIII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: July 3, 2013.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).